Rohan P. DUNBAR

v.

INS.

Gyno Domond

v.

INS.

Enrico St. CYR

v.

INS.

Nos. 3:99CV260(AHN), 3:99CV772(AHN), 3:99CV773(AHN).

United States District Court, D. Connecticut.

Aug. 23, 1999.

Michael G. Moore, Springfield, MA, for plaintiff.

James K. Filan Jr., Asst U.S. Attorney, District of Connecticut, New Haven, CT, for defendant.

### RULING ON PETITIONS FOR HABEAS CORPUS

NEVAS, District Judge.

The petitioners in these cases, Rohan P. Dunbar ("Dunbar"), Gyno Domond ("Do-mond"), and Enrico St. Cyr ("St.Cyr"), are Lawful Permanent Residents ("LPRs") of the United States currently facing deportation as a consequence of criminal acts they have committed. The Immigration and Naturalization Service ("INS") has agreed, through an oral stipulation entered into via the United States Attorney's Office for the District of Connecticut, to suspend the deportation of the petitioners pending the outcome of these actions.

In particular, the petitioners seek writs of habeas corpus compelling the INS to allow them to apply for a statutorily repealed form of discretionary relief from deportation. For the following reasons, Dunbar's petition [doc. # 1 (3:99cv260(AHN))] is GRANTED, Domond's petition [doc. # 1 (3:99cv772(AHN))] is GRANTED, and St. Cyr's petition [doc. # 1 (3:99cv773(AHN))] is GRANTED.

### BACKGROUND

On April 24, 1996, Congress enacted the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA") (effective date April 24, 1996). Later that year, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009 (1996) ("IIRIRA") (transitional rules effective date October 30, 1996 and permanent rules effective date April 1, 1997). As discussed below, these acts established significant changes in the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1537 ("INA"), that affect, *inter alia*, (1) the jurisdiction of federal courts to review immigration decisions and (2) the relief available to aliens involved in deportation proceedings. The effects of these acts underlie the current petitions.

### I. *Dunbar*

Dunbar was admitted to the United States as an LPR on March 27, 1984. Subsequently, he was convicted of assault

in the second degree on January 2, 1996. As a consequence, on March 22, 1996, INS issued an Order to Show Cause which was served on Dunbar on April 18, 1996, but not filed with the Office of the Immigration Judge until May 1, 1996. An Immigration Judge ("IJ") held hearings on November 19, 1996, May 20, 1997, September 23, 1997, and January 12, 1998, and determined that Dunbar was subject to deportation as an alien who had committed an aggravated felony. Dunbar appealed to the Board of Immigration Appeals ("BIA") which dismissed his appeal on January 20, 1999. He filed the current petition for a writ of habeas corpus on February 11, 1999.

## II. *Domond*

Domond entered the United States at an unknown time in the past. He obtained LPR status on August 12, 1993. Subsequently, on November 8, 1996, he was convicted of robbery. The robbery itself had occurred on November 18, 1994. As a result of his conviction, INS issued an Order to Show Cause on December 30, 1996, which was served on Domond on February 24, 1997, and filed with the Office of the Immigration Judge on February 27, 1997. On March 8, 1998, an IJ determined that Domond was subject to deportation as an alien who had been convicted of an aggravated felony. Domond appealed to the BIA which dismissed his appeal on December 22, 1998. He then filed the current petition for a writ of habeas corpus on April 27, 1999.

## III. *St. Cyr*

St. Cyr was admitted to the United States as a LPR on June 17, 1986. He was convicted of sale of a narcotic/hallucinogen on March 8, 1996. As a consequence, INS issued a Notice to Appear in removal proceedings on April 10, 1997, which was served on St. Cyr on July 10, 1997 and filed with the Immigration Judge on July 23, 1997. On January 12, 1998, an IJ determined that St. Cyr was subject to deportation as an alien convicted of sale of a narcotic/hallucinogen. St. Cyr appealed to the BIA which dismissed his appeal on November 10, 1998. He filed the current petition for a writ of habeas corpus on April 27, 1999.

## DISCUSSION

The INA provides that any alien who has been convicted of one of several various offenses, such as an aggravated felony or a controlled substance violation, is subject to deportation. *See* 8 U.S.C.A. § 1227(a)(2)(A)-(E) (West 1999). Prior to the 1996 amendments to the INA, an alien who faced deportation due to a criminal conviction could request discretionary relief from deportation pursuant to INA § 212(c). *See* 8 U.S.C.A. § 1182(c) (West 1995) (repealed). If that request was denied, an alien could seek review in the Courts of Appeals, *see* 8 U.S.C.A. § 1105(a) (West 1995) (repealed), or could petition for a writ of habeas corpus pursuant to either the INA, *see* 8 U.S.C.A. § 1105a(a)(10) (West 1995) (repealed), or the general habeas statute, *see* 28 U.S.C. § 2241 (1999).

On April 24, 1996, Congress enacted AEDPA. AEDPA § 440(d) barred INA § 212(c) relief for persons subject to deportation due to having committed any of certain enumerated criminal offenses, including aggravated felonies, and crimes involving "moral turpitude" or controlled substances. *See* AEDPA § 440(d). Later, in September 1996, Congress passed IIRIRA which repealed INA § 212(c) relief entirely and replaced it with a new type of relief designated "cancellation of removal." *See* IIRIRA § 304(b); *see also* 8 U.S.C. § 1229(b).[1] Cancellation of removal relief

---

1. IIRIRA contains two different sets of rules. First, there are the "transitional rules" which apply to persons whose removal proceedings were commenced before April 1, 1997, and against whom a final deportation order issued after October 30, 1996. *See* IIRIRA §§ 309(c), as amended by the Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat.

cannot be given to any alien that has been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3). Included in the definition of an aggravated felony is "illicit trafficking in a controlled substance." 8 U.S.C.A. § 1101(a)(43)(B).

In addition, IIRIRA supplanted the INA's judicial review provisions. *See* IIRIRA § 309(c)(1); *see also* 8 U.S.C. § 1252. In particular, the amended § 1252 generally limits the availability of judicial review of deportation orders to the Courts of Appeals. *See* 8 U.S.C. § 1252(a)-(b). As relevant to the arguments presented in this case, § 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this act.

8 U.S.C.A. § 1252(g).

Here, the government asserts that the 1996 amendments to the INA deprive this Court of jurisdiction over St. Cyr's claim and preclude Dunbar and Domond from requesting INA § 212(c) relief.

### I. *Jurisdiction*

The government contends that this Court lacks jurisdiction over St. Cyr's action because his proceedings before an IJ began after IIRIRA amended § 1252 to place severe limitations on judicial review of removal orders. In support of this claim, the government relies on *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 941–42 & 942 n. 7, 142 L.Ed.2d 940 (1999) (*"AAADC"*), and *Fontes v. Reno*, No. 99cv10491–REK, slip op. at 8–9, (D.Mass. Mar. 9, 1999).

In *AAADC*, the Supreme Court held that § 1252(g) deprived federal courts of jurisdiction over an action that alleged that the INS had targeted certain individuals for deportation because of their affiliation with a politically unpopular group. *See* 119 S.Ct. at 943. The Court ruled that § 1252(g) narrowly applies to preclude judicial review of the Attorney General's "decision or action" to *"commence* proceedings, *adjudicate* cases, or *execute* removal orders." *See id.* The Court noted that many other actions exist that are part of the deportation process that are not covered by § 1252(g), and that § 1252(g) should not be read as an all-encompassing provision. *See id.* Indeed, the Court recognized that the reason this provision focuses on these discrete acts of the Attorney General is that they all represent points in a deportation proceeding at which the Attorney General could decide for humanitarian reasons to "defer action," *i.e.,* to abandon deportation proceedings against an individual who is subject to deportation. *See id.* at 943–44. This provision, then, is designed merely to shelter the Attorney General's decision to continue or discontinue a deportation proceeding, *see id.* at 944, and has no direct relevance to questions regarding a federal court's habeas jurisdiction. Indeed, in regard to the continuing validity of habeas jurisdiction, while the Supreme Court in *AAADC* expressly noted that "disagreement" exists between the Courts of Appeals concerning that issue, *see id.* at 942 n. 7, it never purported to resolve that disagreement.

In pre-*AAADC* rulings, both the Second Circuit and other Courts of Appeals have held that federal courts continue even after the 1996 amendments to the INA to have jurisdiction over petitions for habeas corpus pursuant to 28 U.S.C. § 2241. *See Henderson v. INS*, 157 F.3d 106, 118–20 (2d Cir.1998), *cert. denied sub nom. Navas v. Reno*, —— U.S. ——, 119 S.Ct. 1141,

3656, 3657. Second, there are the "permanent rules" which apply to persons whose removal proceedings commenced after April 1, 1997. *See id.* Given this Court's conclu-

sions, discussed *infra,* regarding the pending petitions, this distinction is not relevant for current purposes.

143 L.Ed.2d 209 (1999); *Jean–Baptiste v. Reno,* 144 F.3d 212, 219 (2d Cir.1998), *reh'g en banc denied,* 175 F.3d 226 (1999); *see also Goncalves v. Reno,* 144 F.3d 110, 123 (1st Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Sandoval v. INS,* 166 F.3d 225 (3rd Cir.1999).

In *Jean–Baptiste,* the Second Circuit held that "in the absence of language affirmatively and clearly eliminating habeas review, we presume Congress did not aim to bar federal courts' habeas jurisdiction pursuant to § 2241." 144 F.3d at 219. In particular, the court ruled that:

> Nothing in the language of either the Antiterrorism Act or the Immigration Reform Act suggests that Congress expressly repealed § 2241, limited its scope, or eliminated the jurisdiction of the district courts under that statute to entertain petitions seeking writs of habeas corpus. Those two Acts therefore do not specifically exclude habeas review in deportation cases under § 2241, and repeal by implication of the rights to petition for habeas corpus relief is disfavored.

*See id.* (citing, *inter alia, Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)).

In *Henderson,* the Second Circuit reaffirmed that § 2241 habeas remains a valid option after the 1996 amendments although the scope of review permitted has been narrowed. *See* 157 F.3d at 119. In particular, the court stated that federal courts retain the "power to review the Attorney General's interpretation of the immigration laws." *Id.* at 120 & nn. 10–12. Similarly, the First and Third Circuits have held that the 1996 INA amendments neither expressly nor implicitly repealed the ability of a petitioner to seek judicial review by a writ of habeas corpus pursuant to § 2241. *See Goncalves,* 144 F.3d at 119–23 (discussing several grounds for

holding § 2241 not repealed); *Sandoval,* 166 F.3d at 238.

■ Here, the Court holds that it retains habeas jurisdiction over all of the petitioners' claims. Following *Jean–Baptiste,* the Court concludes that Congress has not explicitly repealed or limited § 2241 habeas jurisdiction. *See* 144 F.3d at 219. Further, the basic issue of retrospective application of the 1996 amendment and eventual repeal of § 212(c) relief is the same variety of issue over which the *Henderson* court concluded federal courts retain habeas jurisdiction. Finally, as discussed above, the Supreme Court's ruling in *AAADC* is inapposite, as it merely clarifies that § 1252(g) primarily applies to "deferred action" decisions by the Attorney General and does not address the status of habeas jurisdiction after the 1996 amendments.[2]

## II. *Availability of INA § 212(c) Relief*

The government argues that the petitioners should not be entitled to INA § 212(c) relief because their deportation proceedings commenced after the effective date of AEDPA, *i.e.,* April 24, 1996. In particular, the government contends that application to the petitioners of AEDPA § 440(d)-which significantly limited the cases where section 212(c) relief could be sought-does not constitute an unjustified retrospective application of § 440(d).

The Second Circuit has held in general "that § 440(d) does not apply to cases initiated before the date of its enactment." *Henderson,* 157 F.3d at 129 (expressing agreement with the First Circuit's opinion in *Goncalves,* 144 F.3d at 126). In support of this conclusion, the *Henderson* court recognized that "statutes are not ordinarily afforded retroactive effect unless 'Congress has clearly manifested its intent' to have them so applied." *Id.* (quoting *Hughes Aircraft Co. v. United States ex*

---

**2.** Based on this Court's interpretation of *AAADC* and relevant Second Circuit precedent, this Court finds the reasoning of *Fontes,*

No. 99cv10491–REK, slip op. at 8–9, to be unpersuasive.

*rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 (1997)). However, the court found that it did not have to rely on that presumption because "when § 440(d) is read in conjunction with the rest of the AEDPA and with the legislative history of the statute, there is abundant direct evidence that the section was not intended to apply retroactively." *Id.* at 129–30 (discussing that other AEDPA sections contain explicit language of their retrospective effect and that compromise bill passed by Congress omitted Senate language that would have applied § 440(d) retroactively).

Based upon this determination, the Second Circuit held that when a petitioner's "deportation proceeding was pending on the date of the statute's enactment, ... § 440(d) does not apply to him." *Id.* at 130 (footnote omitted). In particular, the court found that § 440(d) did not apply to a petitioner who requested INA § 212(c) relief prior to AEDPA's enactment even though the deportation hearing was held after AEDPA's enactment. *See id.* at 110, 130. The court also ruled that § 440(d) did not apply to a petitioner who was in exclusion proceedings prior to AEDPA's enactment, which were changed to deportation proceedings after the enactment. *See id.* at 111, 130. However, due to its reading of the facts of the petitions in *Henderson,* the Second Circuit expressly stated that it "need not reach [petitioner's] broader argument that the statute should not apply to primary conduct—*i.e.,* criminal convictions—that occurred prior to April 24, 1996." *Id.* at 128 n. 28.

With this background in mind, the Court now turns to the arguments advanced in these cases. Preliminarily, the government argues that this Court should not recognize a deportation proceeding as commencing until after the Order to Show Cause has been filed with the IJ. In support, the government points out that under 8 C.F.R. § 242.1(a) deportation proceedings begin when the Order is filed with the IJ. The government contends that when the Order was issued is irrelevant to whether deportation proceedings have commenced.

▉ The Court is not convinced. This Court agrees with the District of Oregon that:

> the defendants' argument that [petitioner] was not in deportation proceedings until the order to show cause was filed with the immigration court [is unpersuasive]. As of the time the order to show cause was issued, the INS had the power to arrest him; commencement of the case in immigration court was subject only to the vagaries of administrative scheduling. From a due process standpoint, [petitioner] was subject to the deportation power of the INS as of the time the show cause order issued; fairness requires that the INS, having placed [petitioner] under its authority, should also live with the results of that decision.

*Mercado–Amador v. Reno,* 47 F.Supp.2d 1219, 1223–1224 (D.Or.1999) (reaffirming ruling that § 440(d) did not apply to petitioner where INS issued order to show cause prior to AEDPA's enactment but did not serve order on petitioner until after AEDPA's enactment).

Given this Court's determination that a deportation proceeding effectively begins once an Order to Show Cause has been issued to a potential deportee, *Henderson* indicates that potential deportees who have been issued Orders to Show Cause prior to the enactment of AEDPA should be allowed to request INA § 212(c) relief. *See Henderson,* 157 F.3d at 111, 130 n. 30 (finding petitioner whose case changed from exclusion to deportation after April 24, 1996 and who did not request section 212(c) relief until August 2, 1996 should be provided a hearing on such relief). Here, this reasoning requires that Dunbar's petition be granted. However, as discussed below, this Court finds that alternate grounds also compel this result.

As the primary argument in these cases, the petitioners claim exactly what the Second Circuit declined to address in *Henderson*-that § 440(d) should not apply to persons whose convictions (or in Domond's case, criminal conduct only) occurred prior to April 24, 1996. The basic issue, then, is one of "retrospective application."

The Supreme Court, in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), set forth the basic framework for addressing whether a statute applies retrospectively:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483. The Court stated that in making this determination:

> [a] court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosoph-

ical clarity. However, retroactivity is a matter on which judges tend to have "sound ... instinct[s]," *see Danforth v. Groton Water Co.*, 178 Mass. 472, 476, 59 N.E. 1033, 1034 (1901) (Holmes, J.), and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Id.* at 269–70, 114 S.Ct. 1483.

■ Here, the Court holds that these principles dictate that the current petitioners should have their deportation proceedings governed by the laws that were in effect at the time they committed their crimes. *See Pottinger v. Reno*, 51 F.Supp.2d 349, 351 (E.D.N.Y.1999) (stating "petitioners in all these cases should be treated as if the laws governing their rights were those in existence at the time they committed the crimes for which the government now seeks to deport them"). Alternatively, the Court believes that at the very least the date of conviction should control the determination of when a person is in deportation proceedings. *See Wallace v. Reno*, 24 F.Supp.2d 104, 111–12 (D.Mass.1998) (holding that § 440(d) does not apply to individuals whose deportation proceedings resulted from guilty pleas entered into prior to April 24, 1996). The reasons for these conclusions are set forth below.

As an initial matter, the Court finds that the type of discretionary relief the petitioners seek constitutes a legal interest that is important enough for retrospective application concerns to apply. *See Lee v. Reno*, 15 F.Supp.2d 26, 45–46 (D.D.C.1998) (stating that "even though [petitioner] never had a 'right' to receive a § 212(c) waiver, he certainly was entitled to have the opportunity to be heard and to present his case in accordance with the agency's factors" and that "at the time of [petitioner's] conduct, he could have applied for a § 212(c) wavier, and retroactive application of § 440(d) would 'disable' him from doing so"); *see also AAADC*, 119 S.Ct. at 950 (Ginsburg, J., concurring) (recognizing that "[d]eportation ... is a grave sanc-

tion"); *Pottinger*, 51 F.Supp.2d at 362 ("A 'legal change that would have an impact on private parties' planning' triggers the presumption against retroactivity, even if the change is only the attachment of additional civil liability to conduct that was already deemed 'morally reprehensible or illegal'" (quoting *Landgraf*, 511 U.S. at 282–83 & n. 35, 114 S.Ct. 1483)).

Here, the Court finds that the operative event for determining whether AEDPA § 440(d) and the IIRIRA amendments should apply is the actual commission of the crime for which the petitioners now face deportation. *See Pottinger*, 51 F.Supp.2d at 355. "The time of the conviction and the time deportation proceedings commenced were happenstance, without relevance to the reason for congressional treatment of criminal permanent resident aliens." *Id.* Indeed, the very purpose of the amendments was to change the legal consequences of certain criminal conduct, not the consequences of being convicted of that conduct or having deportation proceedings commenced.

As recognized by the Second Circuit in *Henderson* and expounded upon by the Eastern District of New York in *Pottinger*, AEDPA contains several provisions that provide varying degrees of retroactivity for their application. *See Pottinger*, 51 F.Supp.2d at 359 (reviewing how "AEDPA section 440(d)'s silence as to temporal reach stands in stark contrast to the finely calibrated retroactivity language of other AEDPA sections"). This state of affairs leaves no doubt as to the ability of Congress to delineate the temporal reach of a statute. The failure of Congress to explicitly and clearly indicate whether the amendments limiting and ultimately repealing INA § 212(c) relief should apply to primary conduct predating the enactment of those amendments leaves no room for doubt that they the amendments should not be applied retrospectively. *Cf. id.* at 360–361 (stating "Congress's choice not to include ... any retroactivity language—in section 440(d) is reasonably construed as

evidence of its plan to designate the section as applicable only to post-enactment conduct").

As noted in *Pottinger*, this conclusion is bolstered by the Supreme Court's recognition that statutes are generally presumed not to apply retrospectively:

> The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not lightly be disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

*Id.* (quoting *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483). In addition, this Court concurs with the view that "the rule of lenity complements *Landgraf* in requiring the statute to be read in favor of the petitioner." *Id.* at 363.

Here, this determination requires that all of the current petitions be granted because all of the petitioners committed the crimes which provide the basis for their deportation proceedings prior to April 24, 1996.

In the event of an appeal and rejection of the primary holding in this case, the Court notes its belief that at a minimum the date of conviction should govern a potential deportee's eligibility for INA § 212(c) relief. *See Wallace*, 24 F.Supp.2d at 111–12; *see also Pottinger*, 51 F.Supp.2d at 360–61. As recognized in *Wallace*, attorneys have a professional duty to discuss the immigration consequences of a conviction with their noncitizen clients and a large percentage of INA § 212(c) requests for relief have been granted. *See Wallace*, 24 F.Supp.2d at 110–11 (noting, in regard to guilty pleas, that "a noncitizen criminal defendant

would most likely have been informed of and had good reason to consider the immigration consequences of a guilty plea"). These considerations indicate that potential deportees would have had settled expectations and reasonably relied on their eligibility for INA § 212(c) relief at the time of their guilty pleas or convictions. Under these circumstances, the Court concludes that the *Landgraf* principles counsel that the amendments to AEDPA and IIRIRA at issue should not apply retroactively to bar petitioners whose convictions predate those amendments from requesting INA § 212(c) relief.[3]

A brief concluding remark is appropriate. These consolidated cases represent yet another example of the costly and unnecessary litigation that is spawned by Congress when it fails to indicate whether legislation should be applied retrospectively. A one line sentence could have avoided these and many other cases currently pending before the courts of this Circuit and its sister Circuits.

### CONCLUSION

For the reasons stated above, Dunbar's petition [doc. # 1 (3:99cv260(AHN))] is GRANTED, Domond's petition [doc. # 1 (3:99cv772(AHN))] is GRANTED, and St. Cyr's petition [doc. # 1 (3:99cv773(AHN))] is GRANTED. The Clerk is ordered to CLOSE these cases.

---

**3.** The Court notes that if the operative date is found on appeal to be the date of guilty plea or conviction, then all of the petitioners ex- cept Domond will still be eligible to request INA § 212(c) relief.