**Edna O. McDANIEL, Plaintiff,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**No. 3:00CV792(GLG).**

United States District Court, D. Connecticut.

Feb. 28, 2001.

Jonathan J. Einhorn, New Haven, CT, for plaintiff.

Deborah R. Slater, U.S. Attorney's Office, Hartford, CT, for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Petitioner, Edna O. McDaniel, a/k/a Yemi Edna Idowu, a/k/a Edna Wickliffe, a native and citizen of Nigeria, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, asking this Court for protective relief pursuant to the Convention Against Torture[1] ("CAT") and 8 C.F.R. § 208.16(c),[2] and for a waiver of inadmissability under former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C § 1182(c) (1994).[3] The Government has moved to dismiss the petition [Doc. # 10] on the ground that the final Order of Deportation is lawful and properly subject to execution because Petitioner is statutorily ineligible for relief from deportation even under the administrative scheme in effect prior to the recent amendments to the immigration laws.[4]

1. The United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment, Article 3, provides: "No State Party shall ... extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." G.A.Res. ³⁹⁄₄₆, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N.Doc. A/39/51 (1984). Obligations under the CAT have been in effect for the United States since November 20, 1994. On October 21, 1998, the President signed into law legislation requiring agency heads to prescribe regulations implementing the obligations of the United States under Article 3 of CAT. Pub.L. No. 105–277, Division G, 112 Stat. 2681 (Oct. 21, 1998). On February 19, 1999, INS promulgated interim regulations implementing CAT and establishing procedures for aliens seeking to raise a claim under Article 3. 8 C.F.R. pt. 3, *et seq.*

2. Section 208.16(c), *Eligibility for withholding of removal under the Convention Against Torture*, adopts the definition of "torture" set forth in 8 C.F.R. § 208.18(a), and places the burden on the applicant for withholding of removal to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The Regulations state that once the immigration judge determines that it is more likely than not that the alien will be tortured, the alien is entitled to protection under CAT, which protection will either be in the form of withholding of removal or deferral of removal. Section 208.18(a)(1) defines torture as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from ... her ... information or a confession, punishing ... her for an act ... she or a third person has committed or is suspected of having committed, or intimidating or coercing ... her ..., or for any other reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

The Regulations describe "torture" as an "extreme form of cruel and inhuman treatment," 8 C.F.R. § 208.18(a)(2), and "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions," 8 C.F.R. § 208.18(a)(3), which include judicially imposed sanctions and other enforcement actions authorized by law. *Id.*

3. Former INA § 212(c), codified at 8 U.S.C. § 1182(c) (1994), provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)) ....

The phrase "lawfully admitted for permanent residence" is further defined by the INA as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20) (1994).

4. In 1996, Congress amended the INA through the enactment of the Antiterrorism

Additionally, the Government maintains that this Court lacks subject matter jurisdiction to review INS's refusal to grant Petitioner relief under CAT. Petitioner responds that this is not an appeal from the denial of relief under CAT, but rather a challenge to the constitutionality of her CAT proceedings over which this Court would have jurisdiction. With respect to her § 212(c) waiver claim, Petitioner asks this Court to withhold its decision pending a decision in *Dunbar v. INS*, 64 F.Supp.2d 47 (D.Conn.1999), *aff'd sub nom St. Cyr v. INS*, 229 F.3d 406 (2d Cir.2000), *cert. granted*, —— U.S. ——, 121 S.Ct. 848, 148 L.Ed.2d 733 (2001).[5]

## Background

The procedural background of this case is rather complicated, spanning a period of over 22 years.

Plaintiff first entered the United States on September 9, 1978, as a non-immigrant visitor authorized to stay in the United States until September 8, 1979. She remained in the United States beyond her departure date without authority of INS. On October 27, 1981, her status was adjusted to that of a permanent resident, based upon her marriage to a United States citizen. INS later determined that the marriage was fraudulent and revoked her permanent resident status. On November 7, 1986, INS ordered Petitioner to show cause why she should not be deported based on her illegal status in the United States. While the Order to Show Cause was pending, on January 8, 1987, Petitioner was convicted in the United States District Court for the Northern District of Ohio of conspiracy to distribute heroin in violation of 21 U.S.C. § 846. On January 15, 1987, she was convicted in the same court of conspiracy to make a false statement to the Government. She was sentenced to two years imprisonment.

A superseding Order to Show Cause was then issued on November 3, 1987. At her deportation hearing, Petitioner admitted the truth of the charges in the show cause order and conceded her deportability. Through counsel, Petitioner then requested a continuance of the hearing to file an application for suspension of deportation. This was denied by the Immigration Judge based on her two convictions, which he held precluded a finding of good moral character, a prerequisite for a suspension of deportation. Petitioner exercised her appeal rights as long as possible, continu-

and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, *et seq.* (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546, *et seq.*, (1996), which severely narrowed the rights of certain classes of aliens who were ordered deported because of a prior drug conviction. More specifically, AEDPA § 440(d) and IIRIRA § 304 significantly limited the cases where discretionary relief from removal could be sought, effectively precluding an alien, who was removable from the United States because of a conviction of a crime that qualified as an "aggravated felony" from applying for discretionary relief from removal. *St. Cyr v. INS*, 229 F.3d 406, 408 (2d Cir.2000), *cert. granted*, —— U.S. ——, 121 S.Ct. 848, 148 L.Ed.2d 733 (2001) Peti-

tioner argues that these amendments do not apply to her situation. We need not reach that issue because, for purposes of this motion, we will assume that the applicable law was that in effect prior to 1996, as Petitioner argues.

5. Petitioner asks us to reserve ruling on this issue until the Second Circuit's decision in the *Dunbar* case. The Second Circuit affirmed the decision of the District Court on September 1, 2000. On January 12, 2001, the Supreme Court granted the plaintiff's petition for writ of certiorari. We assume that Petitioner would want us to reserve ruling on this issue until the matter is decided by the Supreme Court, which we decline to do for the reasons discussed below.

ing her appeals to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit dismissed her appeal and affirmed the deportation order. Her petition for rehearing *en banc* before the Fifth Circuit was denied, and the Supreme Court did not accept her case for review. Accordingly, pursuant to the Order of Deportation, Petitioner was deported to Nigeria on May 20, 1989.

While in Nigeria, Petitioner states that she was arrested after a meeting with friends about a protest against the Government. She was imprisoned without being charged. After security services learned that she had been deported from the United States, Petitioner was accused of spying for the United States and was tortured, beaten, raped, sodomized and brutalized. She was forced to sleep on a concrete floor and "had no one to bring her food and was deprived of medical help." (Pet.'s St. of Case. at 1.) Petitioner's family was not informed of her whereabouts. Finally, a guard befriended Petitioner and informed her family of her location. After receiving a bribe from her father, the guard helped her to escape to her brother's house in the norther part of Nigeria. Upon learning that this guard had been arrested, Petitioner left the country with the help of her brother.

Petitioner then re-entered the United States illegally. On July 25, 1995, INS issued a new Order to Show Cause, charging her with deportability based upon her prior convictions, her prior deportation, and her failure to obtain the required consent of the Attorney General to re-enter the United States. On August 22, 1995, following a full hearing on the merits, she was ordered deported. Petitioner again pursued an appeal, which was dismissed.

While these matters were pending, she was convicted on July 17, 1996, in the District of Maryland of the federal criminal offense of re-entry after deportation and sentenced to 41 months incarceration.

On January 15, 1998, Petitioner filed a Motion to Reopen before the Immigration Judge. This was denied, and Petitioner appealed. The Board of Immigration Appeals dismissed the appeal. On June 26, 1999, Petitioner sought to amend her appeal and to remand her case to an immigration judge "to process her torture claim application." Based upon the newly enacted Regulations implementing CAT, *see* Notes 1 & 2, *supra*, the Board granted her the right to amend and remanded her claim to the Immigration Court to provide her with an opportunity to apply for protection under Article 3 of CAT. Because of her custodial confinement in Connecticut at FCI Danbury, venue was transferred to Connecticut. On September 22, 1999, following a hearing on Petitioner's CAT claim, the Immigration Judge denied her claim, stating that she had failed to meet her burden of showing that it was more likely than not that she would face torture in Nigeria if deported. Accordingly, he ordered her deported to Nigeria.[6] (Order of the Immigration Judge, Def.'s Ex. 17, and Tr. at 11). She appealed this decision to the Board of Immigration Appeals, which on April 4, 2000, affirmed the Immigration Judge's decision that she had not met her burden of showing that she faced torture in Nigeria, and dismissed her appeal. Petitioner then sought a stay of deportation from the Executive Office for Immigration Review, which denied her request on April 21, 2000. This petition for habeas corpus relief followed.

---

**6.** The Immigration Judge issued an oral ruling, followed by a written order denying her relief under CAT and ordering her deported to Nigeria. Petitioner has attached a transcript of the majority of the Immigration Judge's oral ruling to her Petition.

## Discussion

### I. Petitioner's Convention Against Torture Claim

Petitioner asserts that she should be protected from deportation under CAT because she will be tortured if she is deported to Nigeria. She claims that if she is deported, she will be arrested at the airport because of Nigerian "Decree 33" which provides in part that a "Nigerian citizen found guilty in any foreign country of an offence involving narcotic drugs ... and who thereby brings the name Nigeria into disrepute" shall be guilty of "an offence" under this subsection and, if convicted, "shall be liable to imprisonment for a term of five years without an option of fine and his assets and properties shall be liable to forfeiture as provided by this Decree." She asserts that, in the event of such an arrest, Nigerian officials would discover that she had previously escaped from prison and subject her to harsher conditions. Additionally, she cites to prior torture while incarcerated in Nigeria following her last deportation.

The Government maintains that this Court does not have jurisdiction to review her claim for discretionary relief under CAT.

Petitioner responds that she is asserting a constitutional challenge to whether she was afforded her due process rights in the hearing before the Immigration Judge, which is properly before the Court as part of her petition for habeas corpus relief. This due process claim is not addressed by the Government.

■ We agree with the Government that this Court lacks subject matter jurisdiction over a direct appeal from the Board of Immigration Appeals' denial of a request for discretionary relief under CAT. The legislation authorizing the agencies to promulgate implementing regulations under CAT provides that "nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the convention [CAT] ... except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act [8 U.S.C. § 1252]." Pub.L. 105–277, Div. G, Title XXII, S 2242, Oct. 21, 1998, 112 Stat. 2681–822. Section 242 specifically excludes federal court jurisdiction over denials of discretionary relief. 8 U.S.C. § 1252(a)(2)(B). Because the relief that Petitioner seeks under CAT is discretionary, this Court lacks jurisdiction to hear a direct appeal of the denial of her requested relief. *See Diakite v. INS*, 179 F.3d 553, 554 (7th Cir.1999) (per curiam) (neither CAT nor its implementing legislation grants appellate jurisdiction over petition of alien in deportation proceedings pursuant to § 1252's predecessor, 8 U.S.C. § 1105a(a)(10)); *Avramenkov v. INS*, 99 F.Supp.2d 210, 213–14 (D.Conn.2000).

■ However, Petitioner claims that she is not appealing the decision. Rather, she is challenging her denial of due process during the hearing. The Second Circuit has recently reconfirmed that limited habeas relief is available where an alien claims that he or she is in custody in violation of the Constitution or laws or treaties of the United States and has no other avenue for judicial review available. *Calcano–Martinez v. INS*, 232 F.3d 328, 330 (2d Cir.2000), *cert. granted*, — U.S. ——, 121 S.Ct. 849, 148 L.Ed.2d 733 (2001); *see also Barnaby v. Reno*, 127 F.Supp.2d 322 (D.Conn.2001); *Webb v. Weiss*, 69 F.Supp.2d 335, 337 (D.Conn. 1999). Thus, we consider whether Petitioner has asserted a valid due process claim as part of her habeas petition over

which we would have subject matter jurisdiction.

In her Statement of Case filed in support of her petition, Petitioner raises two alleged procedural irregularities in connection with her CAT hearing: (1) her inability to produce a copy of Nigerian "Decree 33" at the hearing and the lack of response from the Immigration Judge when it was later produced; and (2) the fact that the Immigration Judge did not advise her of her right to seek discretionary relief under former § 212(c) of INA. Neither she nor her counsel has raised any other due process challenge to the CAT hearing. For purposes of ruling on this motion to dismiss, we will assume that Decree 33 was not considered by the Immigration Judge and that Petitioner was not advised of her "right" to seek discretionary relief under former § 212(c).

Petitioner's counsel argues that we must withhold decision on this due process claim because we have before us only the one-page summary order of the Immigration Judge denying her request for relief on the basis of his oral decision. Contrary to this assertion, we do have a transcript of the majority of the Immigration Judge's oral ruling, which Petitioner attached to her initial petition. To what extent we need a transcript of the entire oral decision or the proceedings depends on the nature of Petitioner's due process challenges. In this case, we have assumed that the facts on which Petitioner bases her due process claim are true, and therefore we do not need the entire transcript for purposes of ruling on this motion to dismiss.

■ Petitioner first claims that she was denied due process because the Immigration Judge did not consider Nigerian Decree 33, which she was unable to produce at the hearing but which she later provided as part of a motion for reconsideration that was never ruled upon. The Immigration Judge held that Petitioner did not have enough facts to support her claim of torture if she were deported. Petitioner maintains that this Decree supports her claim that if she is deported to Nigeria she will be arrested and tried again under the Nigerian drug law based upon her conviction in the United States. Although this specific decree was not before the Immigration Judge at the hearing, Petitioner did testify that she would be arrested in Nigeria because of her narcotic conviction in the United States. (Tr. at 7.) The Immigration Judge did not discredit this testimony. He found instead that punishment under a country's laws are not *per se* torture, citing 8 C.F.R. § 208.18(a)(3) ("torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions"). (Tr. at 11–12.) Thus, although this Decree clearly supports Petitioner's claim that she will be arrested if deported to Nigeria, it does not support her claim that she will be subjected to torture.[7] *See* Note 2, *supra.*

7. The Regulations implementing CAT in the United States provide in relevant part as follows:

(2) The burden of proof is on the applicant for withholding of removal under this paragraph to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.
(3) In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including but not limited to:
(i) Evidence of past torture inflicted upon the applicant;
(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

■ Petitioner next complains that the Immigration Judge did not advise her that she might qualify for discretionary relief from removal under former INA § 212(c) since the Order to Show Cause was issued in July, 1995, prior to the amendments to the INA. *See* Note 3, *supra.* There is no due process requirement that the Immigration Judge advise the parties of all of their procedural and substantive rights under the immigration statutes. The Court finds no due process violation in that regard. Moreover, as discussed below, Petitioner was ineligible for relief under INA § 212(c), because she did not qualify as an alien "lawfully admitted for permanent residence ... returning to a lawful, unrelinquished domicile of seven consecutive years." *See* 8 U.S.C. § 1182(c) (1994).

■ An alien claiming a due process violation must demonstrate substantial prejudice. *Anwar v. INS,* 116 F.3d 140, 144 (5th Cir.1997). Immigration orders are final and conclusive on the courts unless the proceedings were manifestly unfair, were such as to prevent a fair investigation, or show manifest abuse of that discretion or authority not fairly exercised. *Kwock Jan Fat v. White,* 253 U.S. 454, 457–58, 40 S.Ct. 566, 64 L.Ed. 1010 (1920). The grounds on which Petitioner's bases her denial of due process claim do not rise to that level. Accordingly, we find that Petitioner has failed to allege a violation of her due process rights under the Fifth Amendment, which would entitle her to habeas relief. Defendant's motion to dismiss is granted in that regard.

## II. Petitioner's Request for a § 212(c) Waiver

■ Petitioner's second request for relief is for a waiver of deportability under former INA § 212(c). The Government argues that Petitioner's claim must be dismissed because she is statutorily ineligible for § 212(c) relief because she did not have legal status in the United States subsequent to her illegal re-entry. Petitioner does not address the merits of this argument but instead suggests that we defer ruling pending a final decision in *Dunbar v. INS.*[8] *See* Notes 4 & 5, *supra.* The Government responds that regardless of the outcome of the *Dunbar* case, which is now before the Supreme Court, Petitioner will not be statutorily eligible for a § 212(c) hearing because she was not "lawfully admitted for permanent residence," as required by former § 212(c). We agree with the Government that our decision in this case need not await a ruling from the Supreme Court on this question because, for purposes of this motion, we will assume that the 1996 Amendments do not apply

(iv) Other relevant information regarding conditions in the country of removal.
8 C.F.R. § 208.16(c)(2), (3). The Immigration Judge is required to first determine whether the alien is more likely than not to be tortured in the country of removal. 8 C.F.R. § 208.16(c)(4).

**8.** The *Dunbar* case concerns the retroactive application of the 1996 amendments to the Immigration and Nationality Act. The Second Circuit held that AEDPA § 440(d) and IIRIRA § 304 do not apply retroactively to pre-enactment guilty pleas or nolo contendere pleas to a criminal offense that qualifies as a removable crime, because such an application would upset reasonable, settled expectations and change the legal effect of prior conduct. *St. Cyr v. INS,* 229 F.3d at 420–21. However, cancellation of removal still applies to all aliens with convictions pre-dating IIRIRA and to all guilty please entered by aliens to deportable crimes after it took effect. *Id.* at 421. Further, as discussed above, the Court held that the IIRIRA does not divest the courts of their habeas jurisdiction under 28 U.S.C. § 2241 to review purely constitutional or statutory challenges to final removal orders when no other avenue of relief is available. As noted above, the Supreme Court has granted certiorari in this case.

and will consider only whether Petitioner was eligible for discretionary relief under INA § 212(c) in effect prior to 1996.

Prior to 1996, INA § 212(c) provided the Attorney General with a mechanism to consider the impact of deportation on the family of a lawfully admitted permanent resident alien. *St. Cyr*, 229 F.3d at 410. The problem facing Petitioner, however, is that she cannot meet the statutory requirement for seeking a discretionary waiver, which is limited to "lawfully admitted permanent resident alien[s]." *See* Note 3, *supra*. At the time of her 1995 hearing, she had re-entered the United States illegally. She was not here lawfully and was ordered deported because of her illegal re-entry. Thus, even if we assume that the former § 212(c) applies to her case, Petitioner is ineligible as a matter of law to apply for the discretionary relief afforded by this section because she was not a "lawfully admitted permanent resident alien." Therefore, we deny her Petition for Habeas Corpus relief on that basis.

### Conclusion

Having found that Petitioner has failed to allege a violation of her due process rights under the Fifth Amendment, and that as a matter of law she is ineligible to apply for relief under former INA § 212(c), we GRANT the Government's Motion to Dismiss the Petition for Writ of Habeas Corpus. The Clerk is directed to enter Judgment accordingly.

SO ORDERED.