Ana ZGOMBIC a/k/a Ana Reynolds A30 211 823, Petitioner,

v.

Steven J. FARQUHARSON, et al., Respondents.

No. CIV.A.3:99 CV 2571(SRU) DW.

United States District Court, D. Connecticut.

March 22, 2000.

Jonathan E. Avirom, Protima Daryana-ni, Avirom & Associates, LLP, New York City, for Petitioner.

Deborah Slater, U.S. Attorney's Office, Hartford, CT, Hugh Mullane, U.S. Department of Justice, Office of Immigration Litigation, for Respondents.

### *MEMORANDUM OF DECISION*

UNDERHILL, District Judge.

The petitioner, Ana Zgombic, a/k/a Ana Reynolds ("Zgombic" or "petitioner"), has been a lawful permanent resident of the United States for almost thirty years. The Immigration and Naturalization Service ("INS") has instituted removal proceedings against Zgombic, and has charged her with deportability as an aggravated felon. Petitioner is currently being detained without the possibility of bond subject to the Immigration and Nationality Act ("INA"). Zgombic filed a petition for habeas corpus relief, pursuant to 28 U.S.C. § 2241, arguing that the mandatory detention provision of the INA is either being misapplied to her or violates her substantive and procedural due process rights under the Fifth Amendment to the U.S. Constitution. The respondents, Steven J. Farquharson, District Director of the INS, and Janet Reno, Attorney General of the United States (collectively, the "government"), moved to dismiss the petition for failure to state a claim for relief. For the reasons discussed below, Zgombic's writ of habeas corpus (doc. # 1)

is GRANTED and the government's motion to dismiss (doc. #5) is DENIED.

## I. BACKGROUND

### A. Factual Background

Zgombic is a 37 year-old, native of Yugoslavia and presumed citizen of Croatia[1] who has been a lawful permanent resident ("LPR") of the United States since 1972. In 1986, Zgombic married Edward Reynolds, a United States citizen. Prior to being taken into custody, Zgombic resided with her husband in Great Neck, New York.

In September 1995, Zgombic left the United States on a nine-month business trip to China. Zgombic returned to the United States on June 6, 1996. Upon her return, a computer records check by the INS discovered an outstanding warrant for her arrest in the Southern District of New York. The warrant involved allegedly fraudulent bank transactions executed by Zgombic between February 1992 and June 1992. As a result of the warrant, Zgombic was "paroled" into the country and remanded to the custody of federal authorities. She was later released on bail by a Magistrate Judge.

On October 7, 1997, five years after the alleged criminal conduct and more than a year since her return to the United States, a six-count criminal indictment was filed in the Southern District of New York charging Zgombic with bank fraud. Court Ex. 1. On July 15, 1998, Zgombic pled guilty to three counts of bank fraud under 18 U.S.C. § 1344. Mem. of Law in Supp. of Respondents' Mot. to Dismiss, Gov't Ex. 1 ("Respondents' Mem."). Zgombic was sentenced to 15 months of imprisonment beginning on August 10, 1998. *Id.* On February 11, 1999, the INS terminated Zgombic's parole status and issued a No-

tice to Appear charging that she was inadmissible pursuant to section 212(a)(2)(A)(i) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i), due to her conviction in 1998. Verified Pet. for a Writ of Habeas Corpus and Compl. for Declaratory and Injunctive Relief, Ex. B ("Verified Compl.").

On August 26, 1999, the INS issued a Notice of Custody Determination, finding that pursuant to INA section 236(c), Zgombic must be detained in the custody of the INS upon her release from federal criminal custody and could not request a review of her detention by an immigration judge because the INA prohibits her release from custody. *Id.* at Ex. A. On October 20, 1999, an immigration judge found that Zgombic was

> a lawful permanent resident alien, who would not normally be considered as an "arriving alien." However, [Zgombic] is within one of the provisions of section 101(a)(13)(A) of the Act, which requires that even a LPR returning to the United States may be considered to be an "arriving alien", such as where there [sic] LPR has committed an offense identified in section 212(a)(2) of the Act. The Court is satisfied that the respondent has been convicted of such a crime, as established by the record in the custody hearing. Therefore, the Court lacks jurisdiction to redetermine the respondent's custody status.

*Id.* at Ex. D. Also on October 20, 1999, the immigration judge ordered Zgombic removed to Croatia, denied her application for cancellation of removal under Section 240A(a) as pretermitted, ruled that her application for a waiver under Sections 212(c) and (h) were pretermitted, and denied her application for termination.[2] *Id.* at Ex. C. Both the custody determination and the removal order are currently on

---

1. In removal proceedings, Zgombic did not designate a country of origin. The Immigration Court designated Croatia as the country to which she would be deported should that become necessary. Respondents' Mem., Gov't Ex. 2 at 2.

2. Termination was sought, in part, so that Zgombic could pursue naturalization pursuant to 8 C.F.R. § 239.2(f) (1999). Respondents' Mem., Gov't Ex. 2 at 2.

appeal before the Board of Immigration Appeals.

## B. Legal Background—Recent Changes in the Immigration and Nationality Act

Before addressing the arguments presented in this case, it would be helpful to review the statutory framework regarding removal, discretionary waiver, and detention of individuals such as petitioner and the significant changes to the INA's removal, discretionary waiver, and detention provisions that resulted from the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") ·(collectively, the "1996 amendments").

### 1. Removal and Discretionary Waivers

Prior to the 1996 amendments to the INA, an alien who faced deportation due to a criminal conviction could request discretionary relief from deportation pursuant to INA § 212(c). See 8 U.S.C. § 1182(c) (repealed). If that ·request was denied, an alien could seek review in the court of appeals, see 8 U.S.C. § 1105(a) (repealed), or could petition for a writ of habeas corpus pursuant to either the INA, see 8 U.S.C. § 1105(a)(10) (repealed), or the general habeas statute. See 28 U.S.C. § 2241.

Effective April 24, 1996, AEDPA expanded the list of criminal offenses ("aggravated felonies") that could render an alien deportable. In addition, section 440(d) of the statute barred INA section 212(c) relief for persons subject to deportation for having committed certain crimi-nal offenses. The statute specified that its changes applied to all deportation proceedings initiated after April 24, 1996. AEDPA also specified that the expanded definition of aggravated felony would apply "to convictions entered on or after the date of the enactment of this Act." Id. § 440(f). Finally, the Act specified that discretionary waivers would no longer be available for those aliens deportable by reason of having committed, inter alia, an aggravated felony. See AEDPA § 440(c) (amending old INA § 212(c),[3] 8 U.S.C. § 1182(c)).

This statutory scheme was short-lived; Congress amended it on September 30, 1996, with the passage of IIRIRA. IIRIRA repealed section 212(c) relief entirely and replaced it with a new type of relief labeled "cancellation of removal." IIRIRA § 304(a), new INA § 240A, 8 U.S.C. § 1229b. This provision authorizes the Attorney General to cancel removal ("removal" now encompassing both deportation and exclusion proceedings) for any alien who has: (1) enjoyed permanent resident status for at least five years; (2) continuously resided in the United States for seven years; and (3) not committed an aggravated felony. See id. (emphasis added). As the foregoing discussion illustrates, with an expanded definition of "aggravated felony," the consequences of being labeled an "aggravated felon" were greatly enhanced due to the new restrictions on discretionary relief from removal.[4]

The instant case raises an issue not yet addressed by the Court of Appeals for the Second Circuit, namely, whether a petitioner whose criminal conduct pre-dates the enactment of AEDPA and IIRIRA is eligible for section 212(c) relief or whether

---

**3.** "Old INA" refers to the language of the statute prior to the 1996 amendments; "new INA" refers to the language of the statute following the 1996 amendments.

**4.** IIRIRA's increased severity also included: a permanent bar to re-entry for "aggravated felons" removed from the United States, see IIRIRA § 301(b); strict limitations on the eligibility of "aggravated felons" sentenced to an aggregate of five years or more for restrictions on removal to a country where life or freedom would be threatened, see id. § 305(a); ineligibility of "aggravated felons" for extreme family hardship relief under section 212(h) of the INA, see id. at § 348; and unreviewability of removal orders based on "aggravated felony" convictions, see id. § 306(a).

the provisions amending section 212(c) relief and ultimately eliminating it altogether should be applied retroactively.

## 2. Detention of Aliens

Under the Immigration and Nationality Act of 1952, the Attorney General had the discretion to release an alien pending a final determination of deportability. The INA provided that:

> Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole.

8 U.S.C. § 1252(a) (1970).

In 1988, in response to concerns about increased criminal activity by aliens, Congress passed an omnibus drug enforcement bill known as the Anti-Drug Abuse Act ("ADAA"), which amended the INA and added, *inter alia*, a mandatory detention provision for certain aliens removable for having committed a finite list of crimes. As amended by the ADAA, the INA provided that "[t]he Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction .... [and] ... the Attorney General shall not release such felon from custody." 8 U.S.C. § 1252(a)(2) (1990), INA § 242(a)(2).

Upon review, numerous courts found this mandatory detention provision to be unconstitutional as a violation of due process protection. *See, e.g., Paxton v. United States,* 745 F.Supp. 1261, 1265–66 (E.D.Mich.1990); *Leader v. Blackman,* 744 F.Supp. 500, 507–09 (S.D.N.Y.1990); *Kellman v. INS,* 750 F.Supp. 625, 628 (S.D.N.Y.1990); *Probert v. INS,* 750 F.Supp. 252, 257 (E.D.Mich.1990), *aff'd on other grounds,* 954 F.2d 1253 (6th Cir. 1992); *Agunobi v. Thornburgh,* 745 F.Supp. 533, 538 (N.D.Ill.1990); *but see*

*Davis v. Weiss,* 749 F.Supp. 47, 50, 52 (D.Conn.1990); *Morrobel v. Thornburgh,* 744 F.Supp. 725, 728 (E.D.Va.1990).

Following these successful constitutional challenges, Congress amended the statute in 1990 and 1991 to permit release of those aggravated felons who were lawfully admitted to the United States, and who could demonstrate that they were neither a threat to the community nor a flight risk.

By enacting AEDPA, Congress eliminated the 1990 and 1991 exceptions for legal aliens and again prohibited release pending a determination of deportation for aliens removable for having committed certain enumerated crimes. As amended by AEDPA section 440(c), 8 U.S.C. § 1252(a)(2), provided that:

> The Attorney General shall take into custody any alien convicted of any criminal offense covered in section 1251(a)(2)(A)(iii) [aggravated felony], (B) [possession of controlled substances], (C) [certain firearm offenses], (D) [miscellaneous crimes, e.g., espionage, sabotage, sedition, selective service violations] of this title, or any offense covered by section 1252(a)(2)(A)(ii) of this title [conviction of two or more crimes involving moral turpitude] for which both predicate offenses are covered by section 1251(a)(2)(A)(i) of this title [classifying crimes of moral turpitude committed within certain time periods after the date of entry as deportable offenses], upon release of the alien from incarceration, [and] shall deport the alien as expeditiously as possible. Notwithstanding [other provisions of section 1252], the Attorney General shall not release such felon from custody.

*Id.*

Only five months later, on September 30, 1996, Congress enacted IIRIRA, which effectively merged deportation and exclusion proceedings into a new and broader category entitled "removal proceedings." The IIRIRA contained a mandatory detention provision, INA section 236(c), now

codified as 8 U.S.C. § 1226(c), which replaced AEDPA section 440(c). For administrative reasons,[5] section 236(c) did not become effective until October 9, 1998. Section 236(c) provides for the mandatory detention of certain criminal aliens. In pertinent part, the statute provides:

(c) Detention of Criminal Aliens.

(1) Custody. The Attorney General shall take into custody any alien who—

(a) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title [including crimes involving controlled substances and controlled substance trafficking]

 *  *  *  *  *  *

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1). Detention is mandatory except in a limited circumstance, namely:

(2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2). Because Zgombic does not fall within the limited release provision of section 1226(c)(2), she is presently being detained without consideration of bond.

## C. Statutes Applicable to Zgombic

There are no material factual disputes among the parties in this case. The parties agree that Zgombic engaged in criminal activity during 1992, which resulted in her conviction on July 15, 1998. The parties further agree that the INS issued a Notice to Appear on February 11, 1999. Based on these facts, it is clear that, although the criminal conduct involved in this case pre-dates the passage of AEDPA and IIRIRA, the conviction at issue was subsequent to the 1996 amendments, and removal proceedings were initiated after the effective date of IIRIRA.[6] It is

---

**5.** Congress provided the Attorney General with the power to request deferment of the implementation of the IIRIRA mandatory detention provision for up to two years if there was insufficient detention space and INS personnel to implement it. *See* IIRIRA § 303(b)(2). The Attorney General exercised her deferment power in both 1996 and 1997, thereby deferring implementation for two years. During the two-year deferment, the "Transition Period Custody Rules" ("TPCRs"), IIRIRA section 303(b)(3), were to be implemented instead of AEDPA section 440(c) or INA section 236(c). *See* IIRIRA § 303(b)(2). The TPCRs provided for bond hearings for some aliens removable for having committed certain crimes and gave the Immigration Court discretion to set bond if a lawfully admitted alien did not present a danger to persons or property and was likely to appear at future removal proceedings. *See* IIRIRA § 303(b)(3). On October 9, 1998, the TPCRs expired and INA section 236(c), 8 U.S.C. § 1226(c), became effective.

**6.** The petitioner argues that despite the issuance of a Notice to Appear in February 1999, she was placed into proceedings on June 6, 1996, when she was paroled into the country following her nine-month trip to China. Petitioner's Supplemental Mem. of Law in Supp. of her Pet. for a Writ of Habeas Corpus and Comp. for Declaratory and Injunctive Relief at 10–11 ("Petitioner's Mem.") (citing *Henderson v. INS,* 157 F.3d 106, 130 (2d Cir.1998)). The petitioner's reliance on *Henderson v. INS* is misplaced. In *Henderson,* the court held that the date the petitioner was placed in proceedings was not altered by the INS's decision to terminate his exclusion proceeding and subsequently bring a deportation proceeding. Accordingly, *Henderson* can be distinguished from the present case on its facts. Contrary to Zgombic's contention, the INS did not have the

against this time line that the petitioner argues that: (1) she is entitled to section 212(c) relief because her criminal conduct pre-dates the enactment of AEDPA and IIRIRA and the amendments repealing section 212(c); and (2) the mandatory detention required under section 236(c) of IIRIRA is unconstitutional.

When Zgombic committed her crime—bank fraud resulting in fifteen months of imprisonment—it did not automatically constitute grounds for deportation. Under then-existing law, there were two ways that a bank fraud conviction could lead to deportation. One was if the individual had previously committed a crime involving moral turpitude. *See* 8 U.S.C. § 1251(a)(2)(A)(ii) (1994) (amended and re-designated as 8 U.S.C. § 1227(a)(2)(A)(ii)). The other was if the bank fraud conviction led to a sentence of at least five years. *See id.* § 1251(a)(2)(A)(iii). Because Zgombic received a sentence of less than five years and had no previous convictions, she was not deportable on the basis of her criminal conduct at the time she committed it.

Even if the offense had justified deportation, Zgombic would have had a right to apply for humanitarian relief from deportation under what was then INA section 212(c), requiring a showing of good moral character and likely future positive contributions to family and society, or under what was then section 212(h), requiring proof that an alien's deportation would result in exceptional hardship to citizen or legally resident immediate family members.[7] Applying section 212(c), Zgombic would have met the eligibility requirements because she was a lawful permanent resident who had resided legally in the United States for more than seven years and she had not been convicted of an "aggravated felony" for which she had served five years in prison. *See* INA § 212(c), 8 U.S.C. § 1182(c) (1994).

As noted above, the permanent rules under IIRIRA went into effect on October 9, 1998, three months after Zgombic's conviction. IIRIRA expanded the definition of the term "aggravated felony" to include "fraud or deceit in which the loss to the victim or victims exceeds $10,000 ...." IIRIRA § 321 (codified at 8 U.S.C. § 1101(a)(43)(M)(i)). IIRIRA also replaced section 212(c) relief with cancellation of removal relief. *See* IIRIRA § 304(a) (codified as amended at 8 U.S.C. § 1229b (Supp. II 1996)). Section 309 of IIRIRA made this new form of relief available in proceedings commenced on or after April 1, 1997. IIRIRA § 309 (codified at 8 U.S.C. § 1229b (Supp. II 1996)). Because Zgombic's removal proceedings were initiated after April 1, 1997, the government argues that section 212(c) relief is unavailable.

## II. DISCUSSION

### A. Judicial Review [8]

#### 1. *Statutory History of Applicable Provisions*

Under the INA, a criminal alien who faced an order of deportation or exclusion could seek judicial review in the court of appeals, pursuant to the Hobbs Act,

---

power to commence removal or deportation proceedings against her until after her conviction in 1997, therefore, proceedings had not effectively begun when she was "paroled" into the country in 1996. *See, e.g., Mercado–Amador v. Reno,* 47 F.Supp.2d 1219, 1224 (D.Or.1999); *Canela v. U.S. Dep't of Justice,* 64 F.Supp.2d 456 (E.D.Pa.1999).

7. In the present case, Zgombic makes no claim to section 212(h) relief.

8. The government concedes that exhaustion of administrative remedies is unnecessary in

light of the constitutional issues raised by Zgombic. The court, nevertheless, considered this jurisdictional issue before ruling. Finding that no administrative proceeding exists to consider the constitutional issues raised by Zgombic, the court concludes that under the circumstances, no exhaustion requirement is present. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Tam v. INS,* 14 F.Supp.2d 1184, 1189 (E.D.Cal.1998).

which allows for review of agency actions. *See* old INA § 106, 8 U.S.C. § 1105a(a) (1994). Although the INA specified that court of appeals review was to be the "sole and exclusive procedure" for judicial review of final orders of deportation, old INA § 106, 8 U.S.C. § 1105a(a), it also provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." *Id.* It was unclear exactly how this habeas provision fit in to the overall statutory scheme, which evinced a clear purpose to consolidate judicial review of a deportation order in one court of appeals proceeding. "The best view is that the [habeas] provision was intended to be limited to situations in which the alien was unable to obtain judicial review under the new statutory procedure." *LaGuerre v. Reno,* 164 F.3d 1035, 1038 (7th Cir.1998), *petition for cert. filed,* 68 U.S.L.W. 3154 (U.S. Sept. 7, 1999) (No. 99–418).

AEDPA deleted INA section 1105a(a)(10) (the INA habeas provision) and replaced it with the following language:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court.

AEDPA § 440(a).

Upon enactment of IIRIRA, the judicial review available to an alien depended on the timing of the alien's removal proceeding. Any removal order that became final before October 30, 1996, was subject to the provisions of AEDPA. Removal orders becoming final after October 30, 1996, were divided into two groups: those that were the result of removal proceedings initiated before April 1, 1997, were to be governed by a set of transitional rules; and those initiated on or after April 1, 1997

were to be governed by IIRIRA's permanent rules. Because Zgombic's removal proceedings began on February 11, 1999, she is governed by the permanent rules under IIRIRA. Unfortunately, although there is ample Second Circuit case law addressing the transitional rules, there is yet none addressing the permanent rules.

IIRIRA's permanent provisions deleted the existing judicial review procedures and replaced them with an entirely new scheme. *See* IIRIRA § 306(b) (deleting old INA § 106, 8 U.S.C. § 1105a (1994) and inserting new INA § 242, 8 U.S.C. § 1252 (1997)). The new judicial review scheme directs that judicial review of orders of removal be conducted in the courts of appeals in the manner those courts typically review agency actions. *See* INA § 242(a)(1), 8 U.S.C. § 1252(a)(1). The permanent rules include a provision prohibiting appeals by certain criminal aliens: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an enumerated] criminal offense . . . ." *Id.* at § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).

The permanent rules also feature new INA section 242(g), 8 U.S.C. § 1252(g), which provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.; see also* IIRIRA § 306(c)(1) (requiring that section 242(g) "apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings"). In *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Court adopted a narrow

construction of section 242(g) holding that it barred review of only the three events enumerated: commencing proceedings, adjudicating cases, or executing removal orders. *Id.* at 482, 119 S.Ct. 936.

Finally, among the "requirements" for petitions for review filed in the courts of appeals pursuant to section 242 is the following:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

INA § 242(b)(9) (as amended), 8 U.S.C. § 1252(b)(9) (1997). In dicta, the Supreme Court has referred to this provision as an "unmistakable 'zipper clause,'" one that "covers the universe of deportation claims." *American–Arab*, 525 U.S. at 482, 119 S.Ct. 936 (contrasting the provision with section 242(g), which it found to have a much narrower scope).

### 2. The Government's Argument Against Habeas Jurisdiction

The Second Circuit has not yet addressed the existence or scope of judicial review under the permanent rules. Therefore, the government relies on the Eleventh Circuit's decision in *Richardson v. Reno*, 180 F.3d 1311 (11th Cir.1999) (Richardson II), *petition for cert. filed*, 68 U.S.L.W. 3367 (U.S. Nov. 23, 1999) (No. 99–887), for guidance. In 1998, the same Eleventh Circuit panel had held that the IIRIRA permanent provisions ended district court jurisdiction to entertain habeas petitions from aliens under 28 U.S.C. § 2241. *See Richardson v. Reno*, 162 F.3d 1338 (11th Cir.1998) (Richardson I). That decision was based in part on reading section 242(g) as a broad jurisdiction-stripping provision. In light of the Supreme Court's subsequent opinion in *American–Arab*, which significantly narrowed the

scope of section 242(g), the Supreme Court granted certiorari in Richardson I, vacated the judgment, and remanded the case to the Eleventh Circuit for reconsideration in light of *American–Arab*. *See Richardson v. Reno*, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999).

On remand, the Eleventh Circuit adhered to its previous decision, but disclaimed any reliance on section 242(g). At the outset, the court noted that the large body of circuit case law supporting habeas jurisdiction in the district courts, including the Eleventh Circuit's own case of *Mayers v. INS*, 175 F.3d 1289 (11th Cir.1999), was decided under the IIRIRA transitional rules and was therefore not directly applicable to a permanent rule case. *See* Richardson II, 180 F.3d at 1313 n. 2; *see also id.* at 1316 n. 6. In support of its position that IIRIRA's permanent provisions ended habeas jurisdiction, the court cited AEDPA's repeal of INA section 106(a)(10), the former habeas provision; IIRIRA's designation of the court of appeals as the venue for judicial review of removal orders; and, most importantly, section 242(b)(9)'s directive that review of "all questions of law and fact" be consolidated in one proceeding in the court of appeals. *See id.* at 1314–15.

In this case, the government concedes that this court has jurisdiction to review the constitutionality of INA section 236(c), 8 U.S.C. § 1226(c). The government argues that "[s]ection 236(e) operates as a bar to judicial review of administrative custody decisions made under Section 236; it does not preclude constitutional challenges to section 236(c) itself." Respondents' Mem. at 15. The government also argues, however, that "once the Board enters a final order of removal against Zgombic, her only avenue of judicial review is the court of appeals." Supplemental Mem. of Law in Supp. of Respondents' Mot. to Dismiss at 16 ("Respondents' Supplemental Mem."). The government asserts that, although evidence of removability and deportability remain reviewable in the court

of appeals, decisions regarding eligibility for discretionary relief are not. *Id.* at 18. In addition, the government contends that the applicability of section 212(c) relief does not merit constitutional review because it involves an "act of grace" and not a constitutional right. *Id.* at 18–19 (citing *Jay v. Boyd*, 351 U.S. 345, 354, 76 S.Ct. 919, 100 L.Ed. 1242 (1956)).

Alternatively, the government argues that, if this court determines it has habeas jurisdiction, a Board of Immigration decision regarding the repeal of section 212(c) relief should be afforded special deference upon review. Respondents' Supplemental Mem. at 20 (citing *INS v. Aguirre–Aguirre*, 526 U.S. 415, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999)). For these reasons, the government concludes that Zgombic is unlikely to overturn the Board's interpretation regarding the repeal of section 212(c) relief.

### 3. Habeas Jurisdiction

Both the Second Circuit and other courts of appeals have held that federal courts continue, even after the 1996 amendments to the INA, to have jurisdiction over petitions for habeas corpus pursuant to 28 U.S.C. § 2241. *See Henderson*, 157 F.3d at 118–20; *Navas v. Reno*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Jean–Baptiste v. Reno*, 144 F.3d 212, 219 (2d Cir.1998), *reh'g en banc denied*, 175 F.3d 226 (1999); *see also Goncalves v. Reno*, 144 F.3d 110, 123 (1st Cir.1998), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Sandoval v. INS*, 166 F.3d 225 (3d Cir.1999). The Eleventh Circuit's holding in Richardson II is not persuasive. The 1996 amendments did not expressly deprive the district courts of habeas jurisdiction, so this court will not assume that Congress did so by implication.

In *Jean–Baptiste*, the Second Circuit held that "in the absence of language affirmatively and clearly eliminating habeas review, we presume Congress did not aim to bar federal courts' habeas jurisdiction pursuant to § 2241." 144 F.3d at 219. In particular, the court ruled that:

> Nothing in the language of either the Antiterrorism Act or the Immigration Reform Act suggests that Congress expressly repealed § 2241, limited its scope, or eliminated the jurisdiction of the district courts under that statute to entertain petitions seeking writs of habeas corpus. Those two Acts therefore do not specifically exclude habeas review in deportation cases under § 2241, and repeal by implication of the rights to petition for habeas corpus relief is disfavored.

*See id.* (citing *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)).

In *Henderson*, the Second Circuit reaffirmed that section 2241 habeas remains a valid option after the 1996 amendments, although the scope of review permitted has been narrowed. *See* 157 F.3d at 119. In particular, the court of appeals stated that federal courts retain the "power to review the Attorney General's interpretation of the immigration laws." *Id.* at 120.

There is nothing in IIRIRA that clearly eliminates habeas jurisdiction in the district courts. The government's attempt, in the present case, to distinguish the decisions cited above based on their application to proceedings initiated before April 1, 1997, is unpersuasive because the applicable provisions are identical whether the proceeding is pre– or post–April 1, 1997. *See Pena–Rosario v. Reno*, 83 F.Supp.2d 349, 359–60 (E.D.N.Y. 2000).

The Second Circuit has said that repeal of habeas review would be free of "constitutional difficulties" only if an alternative means of review were equivalent to habeas jurisdiction. *Henderson*, 157 F.3d at 119 n. 9, 120. The court of appeals has also held that habeas jurisdiction extends to review of the Attorney General's "interpretation of the immigration laws," not merely to constitutional claims. *Id.* At present, no such alternative review exists. In addi-

tion, the basic issue of retrospective application of the 1996 amendment and eventual repeal of section 212(c) relief is the same type of issue over which the *Henderson* court concluded district courts retain habeas jurisdiction. Therefore, this court retains habeas jurisdiction over all of Zgombic's claims.

## B. Availability of Section 212(c) Relief

■ On October 20, 1999, an immigration judge denied Zgombic's application for relief under INA section 212(c), 8 U.S.C. § 1182(c), on the ground that AEDPA section 440(d) and IIRIRA section 304(b) restrict the Attorney General's discretion to grant relief to aliens convicted of aggravated felonies. Zgombic concedes that she is an alien described in AEDPA section 440(d). She also concedes that, although her criminal conduct pre-dates the enactment of AEDPA and IIRIRA, she was convicted and put into proceedings after the effective date of IIRIRA. Based on this sequence of events, Zgombic argues that the 1996 amendments should not be retroactively applied to her pre–1996 criminal conduct. This issue is properly the subject of habeas review. *Henderson,* 157 F.3d at 121 (historically, "in the immigration context, review of statutory questions was deemed essential to ensuring due process of law"); *see Goncalves,* 144 F.3d at 124.

### 1. The Government's Position

The government argues that application to the petitioner of AEDPA section 440(d)—which significantly limited the cases in which section 212(c) relief could be sought—does not constitute a retroactive application of section 440(d). The government relies on decisions rendered by the Fifth, Seventh, Ninth, and Fourth Circuits for support. Respondents' Supplemental Mem. at 4–7, (citing *Requena–Rodriguez*

*v. Pasquarell,* 190 F.3d 299, 308 (5th Cir. 1999); *LaGuerre v. Reno,* 164 F.3d 1035, 1041 (7th Cir.1998), *petition for cert. filed,* 68 U.S.L.W. 3154 (U.S. Sept. 7, 1999) (No. 99–418)); *Magana–Pizano v. INS,* 200 F.3d 603 (9th Cir.1999); *Tasios v. Reno,* 204 F.3d 544, 2000 WL 223333 (4th Cir. Feb.28, 2000).

The government also contends that "[i]t is clear from IIRIRA's language that Congress intended that aliens subject to removal proceedings commenced after April 1, 1997, are not [entitled to] relief under former section 212(c) of the INA." Respondents' Supplemental Mem. at 8. The government claims that the provisions of IIRIRA "were expressly made effective for all aliens placed in removal proceedings." *Id.* In support of its position, the government argues that:

> it is not IIRIRA's effective date provision, § 309(a), by itself that renders section 212(c) relief unavailable due to a removable alien's pre-enactment conduct. Rather, it is section 309(a),[9] read in conjunction with several other specific IIRIRA provisions—creating removal proceedings instead of separate deportation and exclusion proceedings, and repealing section 212(c) relief—that demonstrate Congress' clear intent that aliens subject to removal proceedings not be eligible for section 212(c) relief, which is eliminated as a remedy upon IIRIRA's effective date.

*Id.* at 9. The government concludes that:

> accepting Zgombic's interpretation would mean that the removal provisions and IIRIRA's repeal of section 212(c) relief would apply only to aliens who, *after* the effective date of IIRIRA, committed their offenses, were convicted, sentenced, imprisoned, and eventually placed in removal proceedings—a "superprospective" result contrary to Congress' clear intent that the provisions be effective with respect to aliens subject to

---

9. Section 309(a) provides that, "this subtitle and the amendments made by this subtitle shall take effect on the first day of the first

month beginning more than 180 days after the date of the enactment of this Act." IIRIRA § 309(a).

removal proceedings on or after April 1, 1997.

*Id.* at 10 (emphasis in original).

### 2. The Landgraf Framework

In the present case, Zgombic claims exactly what the Second Circuit declined to address in *Henderson*—that section 440(d) should not apply to persons whose criminal conduct occurred prior to April 24, 1996, because any such application would be impermissibly retroactive. The Supreme Court, in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), set forth the basic framework for addressing whether a statute applies retroactively:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483.

### a. Expressed Retroactivity of the Statute

As recognized by the Second Circuit in *Henderson* and expounded upon by this District in *Dunbar v. INS*, 64 F.Supp.2d 47 (D.Conn.1999), and by the Eastern District of New York in *Pottinger v. Reno*, 51 F.Supp.2d 349 (E.D.N.Y.1999), AEDPA contains several provisions that provide varying degrees of retroactivity. *See Dunbar*, 64 F.Supp.2d at 54; *Pottinger*, 51

F.Supp.2d at 359 (reviewing how "AEDPA section 440(d)'s silence as to temporal reach stands in stark contrast to the finely calibrated retroactivity language of other AEDPA sections"). This state of affairs leaves no doubt about the ability of Congress to delineate the temporal reach of AEDPA and IIRIRA. The failure of Congress to indicate clearly and explicitly that the amendments limiting and ultimately repealing INA section 212(c) relief should apply to conduct predating the enactment of those amendments counsels strongly against applying the amendments retroactively. *Cf. id.* at 360–361 ("Congress's choice not to include … any retroactivity language—in section 440(d) is reasonably construed as evidence of its plan to designate the section as applicable only to post-enactment conduct.").

As noted in *Pottinger*, this conclusion is bolstered by the Supreme Court's recognition that statutes are generally presumed not to apply retroactively:

> The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not lightly be disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

51 F.Supp.2d at 361 (quoting *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483). In addition, "the rule of lenity complements *Landgraf* in requiring the statute to be read in favor of the petitioner." *Id.* at 363, 114 S.Ct. 1483.

The government's reliance on *Scheidemann v. INS*, 83 F.3d 1517 (3d Cir.1996); *Samaniego–Meraz v. INS*, 53 F.3d 254 (9th Cir.1995); *Asencio v. INS*, 37 F.3d 614 (11th Cir.1994); *Campos v. INS*, 16 F.3d 118 (6th Cir.1994); and *Buitrago–Cuesta v. INS*, 7 F.3d 291 (2d Cir.1993), in

further support of its argument is misplaced. In each of these cases, the court was faced with interpreting statutory language not at issue in the present case. Consequently, those decisions were based on analyses of the language and structure of other acts that have little or no bearing on the language and structure of AEDPA and IIRIRA.

### b. *Nature of the Right at Issue*

As a long-time permanent resident, Zgombic has a strong legal interest in her residency in the United States. Although relief under section 212(c) is purely discretionary in nature, its historic availability to criminal aliens such as Zgombic has created a legal interest in the opportunity to apply for such relief. *See Francis v. INS,* 532 F.2d 268, 273 (2d Cir.1976). Accordingly, applying the *Landgraf* framework, the consequences posed by the 1996 amendments to availability of section 212 relief triggers a presumption against retroactivity. *Landgraf,* 511 U.S. at 282–83, 114 S.Ct. 1483; *see also Goncalves,* 144 F.3d at 128 (application of section 440(d) "takes away a form of relief that, while discretionary, is plainly substantive"); *Dunbar,* 64 F.Supp.2d at 54 (refusing to apply the AEDPA and IIRIRA amendments retroactively).

The type of discretionary relief Zgombic seeks in the present case constitutes a legal interest that is important enough for retrospective application concerns to apply. *See Lee v. Reno,* 15 F.Supp.2d 26, 45–46 (D.D.C.1998) ("even though [petitioner] never had a 'right' to receive a § 212(c) waiver, he certainly was entitled to have the opportunity to be heard and to present his case in accordance with the agency's factors" and that "at the time of [petitioner's] conduct, he could have applied for a § 212(c) wavier, and retroactive application of § 440(d) would 'disable' him from doing so"); *see also American–Arab,* 525 U.S. at 497, 119 S.Ct. 936 (Ginsburg, J., concurring) (recognizing that "[d]eportation ... is a grave sanction"); *Pottinger,* 51 F.Supp.2d at 362 ("A 'legal change that would have an impact on private parties' planning' triggers the presumption against retroactivity, even if the change is only the attachment of additional civil liability to conduct that was already deemed 'morally reprehensible or illegal' ") (quoting *Landgraf,* 511 U.S. at 282–83 & n. 35, 114 S.Ct. 1483).[10]

### c. *Retroactive Effect*

The next question is "whether the application of the statute to the conduct at

---

10. The government relies on cases outside of this circuit that discount the idea that an alien might not have engaged in illegal conduct had the consequences on their prospects of avoiding deportation been known. *See, e.g., La-Guerre,* 164 F.3d at 1041 ("It would border on the absurd to argue that these aliens might have decided not to commit drug crimes, or might have resisted convictions more vigorously, had they known that if they were not only imprisoned but also, when their prison term ended, ordered deported, they could not ask for a discretionary waiver of deportation."), *cert. denied,* —— U.S. ——, 120 S.Ct. 1157, —— L.Ed.2d —— (2000); *Tasios v. Reno,* 204 F.3d 544, 549 (4th Cir.2000) ("no one could reasonably rely 'on the availability of discretionary waiver of deportation when choosing to engage in illegal drug activity' ") (citing *De Osorio v. INS,* 10 F.3d 1034, 1042 (4th Cir.1993)).

The point made in those decisions does not apply to Zgombic, who was treated differently because she traveled abroad. Counsel for the government represented during oral argument before the court on March 1, 2000, that, but for Zgombic having been paroled into the country after a nine-month trip to China, she would have been entitled to a detention hearing before an immigration judge. Therefore, it is entirely possible that, had Zgombic been aware of the potential loss of discretionary review and/or a detention hearing pending removal, she would never have left the United States.

In general, "[i]ndividuals are presumed to act against a backdrop of legal obligations." *Pena–Rosario,* 83 F.Supp.2d at 365. "Whether or not the operative conduct might have been different, the immigrant has a presumptive right to the imposition of only those consequences which could have attached at the time he committed his act." *Maria v. McElroy,* 68 F.Supp.2d 206, 229 (E.D.N.Y.1999).

issue would result in a retroactive effect." *Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 2003, 144 L.Ed.2d 347; *see also Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. A statute will not be said to have a retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment" or because it "upsets expectations based in prior law." *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483. The test is instead "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 269–70, 114 S.Ct. 1483; *see also Martin,* 119 S.Ct. at 2006.

Prior to enactment of the 1996 amendments, commission of certain crimes meant only the possibility of deportation. Afterwards, it means the certainty of deportation. *See Maria,* 68 F.Supp.2d at 230. The replacement of a discretionary regime with a mandatory one is of momentous formal and practical significance. *See id.* ("Converting a maximum sentence into a mandatory one ... has a retroactive effect."). New legal consequences (automatic as opposed to possible deportation) have clearly been attached to events completed before the statutory enactments. Application of the new AEDPA and IIRIRA restrictions to Zgombic would take away from her a form of relief that, although discretionary, is plainly substantive, and so implicates *Landgraf*'s presumption against retroactivity. In the past a substantial number of aliens under deportation orders were granted such relief, usually on a showing that they had reformed their ways and become productive members of society. Indeed, from fiscal years 1989 through 1994, it appears that over half of all applications for section 212(c) relief were granted. *See Goncalves v. Reno,* 144 F.3d 110, 128 (1st Cir.1998) (citing *Mojica v. Reno,* 970 F.Supp. 130, 178 (E.D.N.Y. 1997)), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

In the present case, the court concludes that the operative event for determining whether the 1996 amendments should apply is the actual commission of the crime for which Zgombic now faces removal. *See Pottinger,* 51 F.Supp.2d at 355. "The time of the conviction and the time deportation proceedings commenced were happenstance, without relevance to the reason for congressional treatment of criminal permanent resident aliens." *Id.* Zgombic's access to discretionary relief under section 212(c) cannot be dependent upon the random administrative workings of the INS. The very purpose of the AEDPA and IIRIRA amendments was to change the legal consequences of certain criminal conduct, not the consequences of being convicted of that conduct or having deportation or removal proceedings commenced. *See Dunbar,* 64 F.Supp.2d at 53 ("the current petitioners should have their deportation proceedings governed by the laws that were in effect at the time they committed their crimes."); *Pottinger,* 51 F.Supp.2d at 351 ("petitioners in all these cases should be treated as if the laws governing their rights were those in existence at the time they committed the crimes for which the government now seeks to deport them").

For the reasons discussed above, the court concludes that there is no clear congressional intent to apply the elimination of section 212(c) relief retroactively and that the rights at issue are significant. Zgombic is entitled to pursue a discretionary waiver, pursuant to pre-AEDPA section 212(c), because her crimes were committed prior to April 24, 1996.

### C. Constitutionality of Section 236(c)

The due process clause of the Fifth Amendment provides, "No person shall ... be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. Due process protection has two components, a substantive due process component and a procedural due process component. *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The

substantive due process component precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Id.* (citations and quotations omitted). The procedural due process component precludes the government from depriving a person of life, liberty, or property in an unfair manner. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Substantive and procedural due process claims must be supported by an underlying liberty interest. Accordingly, any due process analysis must begin with a "careful description of the asserted right." *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

Zgombic claims that she has a liberty interest in being free from detention without a hearing. In particular, Zgombic argues that mandatory detention under section 236(c) of IIRIRA violates her substantive and procedural due process rights. Based on this argument, Zgombic seeks an order requiring the government either immediately to release her from detention or to schedule an immediate bond hearing before an immigration judge. Petitioner's Mem. at 23. In support of her position, Zgombic argues that she "continues to be an LPR even though she happened to be returning to the country when she was brought to the attention of the INS and as such should enjoy the rights afforded all legal permanent residents." *Id.* at 17–18.[11]

Zgombic does not clearly distinguish between her substantive due process claim and her procedural due process claim. The government contends that Zgombic's procedural due process claim "is nothing more than her 'substantive due process' argument recast in 'procedural due process' terms." Respondents' Mem. at 21–21 (citations omitted). Construing her substantive due process claim as a right to be free from detention and her procedural claim as a right to be free from detention without a hearing, the court will address each of these claims in turn.

### 1. Substantive Due Process

■ As noted above, substantive due process prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095 (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)), and *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The simplest example of such a right is the claim being made here-the right to freedom from bodily restraint. *See Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Once government action infringes upon a "fundamental" right, the court will strike down the offending act or statute unless the infringement is narrowly tailored to serve a compelling governmental interest. *Flores,* 507 U.S. at 302, 113 S.Ct. 1439. If the right at issue is not "fundamental," however, the court will uphold the act or statute so long as it is rationally related to a legitimate governmental interest. *Washington v. Glucksberg,* 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ As the government notes, based on "Congress' plenary power, immigration statutes like section 236(c) are subject to highly deferential review, even when subject to a constitutional challenge."[12] Re-

---

11. Although raised only in passing in her memorandum, *see* Petitioner's Mem. at 18, and therefore not addressed by the court here, Zgombic makes an equal protection claim in her Complaint, questioning the differential treatment afforded her as a returning LPR versus a LPR who did not travel outside the country. Verified Compl., Count Two.

12. It is widely recognized that Congress exercises plenary control over immigration. *See Flores,* 507 U.S. at 305, 113 S.Ct. 1439; *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52

spondents' Mem. at 17. It has "long been held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). *See, e.g., United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 94 L.Ed. 317 (1950); *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–660, 12 S.Ct. 336, 35 L.Ed. 1146 (1892). In considering the mandatory detention of section 236(c) as it applies to aggravated felons, the court concludes that it is sufficiently narrowly tailored to serve a compelling government interest and therefore survives substantive due process scrutiny.[13] *See Flores*, 507 U.S. at 302, 113 S.Ct. 1439. It does not shock the conscience that a class of aliens subject to almost certain removal [14] would need to be detained pending removal. Zgombic has not met the extraordinarily high burden of establishing that there are no circumstances under which she could lawfully be detained pending removal.

### 2. Procedural Due Process

■ When considering a procedural due process claim, the court must apply the factors set forth in *Eldridge*. Those factors are as follows:

First, the private interest that will be affected by the official action; second,

the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35, 96 S.Ct. 893. Analysis of these factors leads to a different result.

#### a. The Interests at Stake for Zgombic

Zgombic, who has already been determined removable, remains in custody pending resolution of her appeal, *inter alia*, of an immigration judge's denial of her application for relief under section 212(c) of the INA. Whether or not Zgombic ever obtains section 212(c) relief, her release from detention pending removal would fulfill her significant liberty interest in residing freely in the United States.[15] Even a short period of parole before final resolution of her removal proceeding would be significant, because even a short-term separation from family members is "a deprivation which the Supreme Court has repeatedly 'rank[ed] high among the interests of the individual.'" *Hamaya*, 797 F.Supp. at 191 (quoting *Plasencia*, 459 U.S. at 34, 103 S.Ct. 321); *see also St. John*, 917 F.Supp. at 250 (an alien's liberty interest—even in what may be a limited period of parole prior to exclusion—is

L.Ed.2d 50 (1977). "[O]ver no conceivable subject is the legislative power of Congress more complete." *Fiallo*, 430 U.S. at 792, 97 S.Ct. 1473. Accordingly, this plenary power allows for little judicial review of immigration statutes. *See id.; Shaughnessy v. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments, largely immune from judicial control").

**13.** In passing IIRIRA, Congress articulated the following reasons for including a mandatory detention provision: (1) protecting the public from potentially dangerous criminal aliens; (2) risk of flight during removal pro-

ceedings; (3) insuring attendance at removal hearings; and (4) restoring the public's faith in the immigration system. *See* S.Rep. No. 104-48, *reprinted in* 1995 WL 170285 (Leg. Hist.) at 1–6, 9, 18–23.

**14.** Of course, unlike the majority of aggravated felons, including the petitioner in *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999), Zgombic has not forfeited all legal entitlement to remain in the United States and still has some hope of clemency under section 212(c).

**15.** Zgombic's liberty interest is considerably heightened because she can pursue section 212(c) relief, and is therefore potentially entitled to remain in United States indefinitely.

among the highest order of individual rights). Putting the potential for section 212(c) relief aside, unless and until the decision regarding petitioner's removal becomes administratively final, it cannot be said with certainty that petitioner has no legal right to be in the United States.

The government has offered no evidence, other than her nine-month absence, of any intent on the part of Zgombic·to abandon her residency in the United States. To the contrary, she has been a LPR for almost thirty years and, as a result, has developed strong ties to this country, including ties of marriage. Those strong ties, in turn, give rise to a strong liberty interest in remaining a legal permanent resident. Merely by leaving the country for nine months, Zgombic did not abandon her residency or extinguish her due process rights. This point was confirmed by counsel for the government, who indicated during oral argument on March 1, 2000, that Zgombic has not yet lost her status as a LPR. Based on the foregoing, the Court concludes that Zgombic has a significant liberty interest at stake.

### b. The Risk of an Erroneous Deprivation and the Probable Value of Additional or Different Procedural Safeguards

In examining the risk of an erroneous deprivation of rights, the court is mindful of Judge Mukasey's concerns in *Cruz–Taveras*, No. 96 CIV. 5068(MBM), 1996 WL 455012 (S.D.N.Y. Aug.13, 1996), that the INS appears to be conducting " 'cookie cutter' parole adjudication" and applying "what amounts to an irrebuttable presumption that all aggravated felons are a risk to abscond." *Id.* at *6. In addition, as Judge Wood noted in *St. John*, "political and community pressure," combined with the fact that permanent resident aliens cannot vote, "creates a powerful potential for bias against aliens in the INS's parole determinations." 917 F.Supp. at 251. Consistent with those decisions, the court concludes that a risk of erroneous deprivation

exists. The additional safeguard of an impartial adjudicator therefore has obvious value. Accordingly, the Court concludes that the probable value of additional or different procedural safeguards is great.

### c. The Governmental Interest in Using Current Procedures

"The government's interest in efficient administration of the immigration laws at the border [ ] is weighty." *Plasencia*, 459 U.S. at 34, 103 S.Ct. 321. Accordingly, the government has an obvious, important interest in avoiding the necessity of holding parole hearings for all alien aggravated felons. Moreover, "it must weigh heavily in the balance [of the *Eldridge* factors] that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Id.* (citations omitted). Nevertheless, the factors in support of a detention hearing outweigh the government's concededly weighty interest in efficient administration of the immigration laws. "[T]here is no reason to believe that a short parole hearing before an Immigration Judge would impose a significant burden on the INS," especially when such hearings are limited to permanent resident aliens. *Cruz–Taveras*, 1996 WL 455012 at * 7. In this case, Zgombic will be before an immigration judge in the near future based on the court's decision that she is eligible for section 212(c) relief. Conducting a parole hearing prior to the section 212(c) hearing would impose little burden on the government. Finally, Zgombic does not have the keys to her own cell in her pocket. *Cf. Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999). As long as section 212(c) relief is potentially available, this country remains Zgombic's home. Accordingly, Zgombic enjoys a due process right to be free from detention without an individualized hearing. The court concludes that section 236(c) is unconstitutional as applied to Zgombic because the statute violates her procedural due process rights.

## III. CONCLUSION

For the reasons set forth above, the Petitioner's Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (doc. # 1) is GRANTED and Respondent's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (doc. # 5) is DENIED. The government shall afford Zgombic a detention hearing before an immigration judge within seven days of the date this order is issued. The immigration judge shall state clearly, on the record, the basis of an individualized determination whether any condition or combination of conditions of release will reasonably ensure that Zgombic will not flee and that she will not endanger the public. In addition, the government shall afford Zgombic a prompt, meaningful opportunity to pursue section 212(c) relief.

It is so ordered.